IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO:  22-_____ |
| v. | : | DATE FILED:  November 8, 2022 |
| MUHAMAD ALY RIFAI | : | VIOLATIONS:<br>18 U.S.C. § 1347 (health care fraud - 4 counts)<br>Notice of forfeiture |
| | : | |

## INDICTMENT

### COUNTS ONE THROUGH FOUR

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

### INTRODUCTION

### The Defendant And His Practice

1.  Defendant MUHAMAD ALY RIFAI was a licensed psychiatrist who was the sole owner of Blue Mountain Psychiatry, LLC ("Blue Mountain Psychiatry"), a psychiatry practice with offices located in Easton, Palmerton, and Stroudsburg, Pennsylvania. In addition to his private practice, defendant RIFAI was employed at Easton Hospital, and contracted with various nursing homes.

2.  In or about November 2012, Blue Mountain Psychiatry applied to participate as a provider in the Medicare Program ("Medicare"). Defendant MUHAMAD ALY RIFAI signed Blue Mountain Psychiatry's application to enroll as a Medicare provider. Defendant RIFAI was the only Delegated Official identified in the application, and he was the primary signatory on Blue Mountain Psychiatry's bank accounts into which Medicare

reimbursements were paid by electronic deposit.

3. Defendant MUHAMAD ALY RIFAI, was the primary provider of psychiatric services at his practice, Blue Mountain Psychiatry. From on or about January 1, 2015, through on or about October 17, 2022, the total claims submitted by Blue Mountain Psychiatry to Medicare Part B was at least approximately $15 million, for which Medicare paid the practice at least approximately $4 million. Over 75% of all claims submitted to Medicare, or approximately $11.8 million of charges, were for services that defendant RIFAI claimed that he had rendered.

4. Defendant MUHAMAD ALY RIFAI employed and contracted with non-physician personnel, including certified registered nurse practitioners, to provide services, including geriatric psychiatry.

5. Defendant MUHAMAD ALY RIFAI and his practice, Blue Mountain Psychiatry, employed and contracted with administrative staff, including receptionists and billers, to submit claims to Medicare.

**The Medicare Program**

6. The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who are at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

7. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

8. Medicare was divided into multiple parts: Part A covered hospital inpatient care, Part B covered the costs of physicians' services and outpatient care, Part C included Medicare Advantage Plans and Part D covered prescription drugs. Medicare coverage for outpatient prescription drugs is primarily provided under the voluntary Part D benefit.

9. Medicare telehealth services were Part B covered services that a practitioner provided to an eligible beneficiary through a telecommunications system. Coverage and payment for Medicare telehealth included consultation, office visits, individual psychotherapy, and pharmacologic management delivered via a telecommunication system.

10. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Medicare required all Part B claims be submitted electronically for processing.

11. As part of the Medicare enrollment application, the provider agreed that he would ensure every electronic entry can be readily associated and identified with the original source document. The provider was required to retain all original source documents and medical records pertaining to any such Medicare claim for six years from the date of its creation, or the date when it was last in effect, whichever is later. Health care providers were given, and provided with online access to, Medicare manuals and service bulletins describing proper billing procedures and billing rules and regulations.

12. Per Title 45, Code of Federal Regulation, Section 162, all health care

providers (that is, physicians, suppliers, hospitals, and others), must obtain a National Provider Identifier (NPI). The NPI is a standard unique identification number for covered health care providers. Providers must use their NPI in the administrative and financial transactions adopted under the Health Insurance Portability and Accountability Act (HIPAA). These standard HIPAA transactions included claims, eligibility inquiries and responses, claim status inquiries and responses, referrals, and remittance advices.

13. Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a beneficiary. This occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

14. In order to bill the Medicare program, providers used a five-digit number, known as a Current Procedural Terminology (CPT) code, that identified the nature and complexity of the service provided. The CPT codes were listed in the CPT manual, which is published annually by the American Medical Association. CPT codes were universally used by health care providers to bill government and private health insurance programs for services rendered. Virtually every medical procedure had its own CPT code. Medicare paid a specified amount for each CPT code billed.

15. Health care providers could only submit claims to Medicare for medically necessary services that they rendered. Medicare regulations required health care providers to maintain complete and accurate patient medical records to verify that the services were provided as described in the claim. These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

## The Health Care Fraud Scheme

16. From on or about January 1, 2015 through in or about October, 2022, defendant

**MUHAMAD ALY RIFAI**

knowingly and willfully executed, and attempted to execute, a scheme or artifice to defraud a health care benefit program namely, Medicare, to obtain, by means of false and fraudulent pretenses, representations and promises, money and property owned by, or under the custody or control of Medicare by submitting false and fraudulent claims for reimbursement.

17. Defendant MUHAMAD ALY RIFAI obtained beneficiary information from nursing home patients that he later used to cause the submission of false and fraudulent claims to Medicare for psychological services and "add-on" services that he knew he had not provided.

18. Defendant MUHAMAD ALY RIFAI created billing sheets containing the beneficiary names, dates of service and CPT codes – namely 90833 (Psychotherapy 30 min), 90785 (Interactive complexity), and 99490 (Chronic care management)—for beneficiaries to whom defendant RIFAI's staff had purportedly provided services in nursing homes, billing for higher levels of care than the staff provided and knowing that the staff had not provided all of the services identified on the billing sheets.

19. Despite not having seen the patient, defendant MUHAMAD ALY RIFAI added handwritten notations or a pre-printed stamp to patient progress notes to support billing for psychological and add on services that were not provided by his staff.

20. Defendant MUHAMAD ALY RIFAI created bogus billing sheets

containing beneficiary names, dates of service, and CPT codes for Medicare beneficiaries to whom defendant RIFAI had purportedly provided services in nursing homes, knowing he had not provided all of the services identified on the billing sheets including, but not limited to:

   a. duplicate claims for the same nursing home resident beneficiaries, on the same dates, at various locations;

   b. billing for patients were deceased on or before the dates of service identified in the claims; and

   c. billing for impossible service days where, had defendant RIFAI actually performed the services billed, he would have worked 24 hours or more.

21. Defendant MUHAMAD ALY RIFAI gave the false billing sheets to his staff and directed them to submit claims to Medicare on his behalf for services that defendant RIFAI knew were not provided to beneficiary.

22. In all, by the above means, defendant MUHAMAD ALY RIFAI, through Blue Mountain, obtained Medicare payments of at least approximately $1.36 million based on fraudulent claims.

23. On or about the dates specified as to each count below, in Easton, in the Eastern District of Pennsylvania and elsewhere, defendant

**MUHAMAD ALY RIFAI**

knowingly and willfully executed a scheme and artifice to defraud a health care benefit program, that is Medicare, and to obtain money and property owned by and under the custody and control of that health care benefit program, by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of/payment for health care benefits, items and

services, by submitting and causing to be submitted fraudulent health care insurance claims described below for services that were not actually provided, as follows, each claim constituting a separate count:

| COUNT | MEDICARE BENEFICIARY | CPT CODE | APPROX. CLAIM SUMBMISSION DATE | APPROX. AMOUNT BILLED |
|---|---|---|---|---|
| 1 | J.D. | 90833 | 2/7/2018 | $147.00 |
| 2 | K.Z. | 90833 | 2/9/2018 | $147.00 |
| 3 | R.W. | 90833 | 5/15/2018 | $147.00 |
| 4 | C.M. | 90833 | 5/15/2018 | $147.00 |

All in violation of Title 18, United States Code, Section 1347.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     As a result of the violations of Title 18, United States Code, Section 1347, set forth in this indictment, defendant

**MUHAMAD ALY RIFAI**

shall forfeit to the United States of America any property that constitutes or is derived from gross proceeds traceable to the commission of such offense(s), including, but not limited to, the sum of $ 1,100,000.

      2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant(s):

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the Court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

A TRUE BILL:

███████████████

_____
JACQUELINE C. ROMERO
UNITED STATES ATTORNEY

No._____

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

MUHAMAD ALY RIFAI

INDICTMENT

18 U.S.C. § 1347 (health care fraud - 4 counts)

_____
Foreman

Filed in open court this 8 _____ day,
of November A.D. 20 22

Clerk

Bail, $_____