## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 22-390 |
| | : | |
| MUHAMAD ALY RIFAI | : | |

## ORDER

**AND NOW**, this 10th day of April, 2024, upon consideration of certain motions filed by

Defendant Muhamad Aly Rifai (ECF Nos. 42, 43) and the Government's omnibus opposition

thereto (ECF No. 48), it is hereby **ORDERED** as follows:

1.  Mr. Rifai's Supp. Mot. for Disclosure of Exculpatory Evid. and Combined Mem.

    of Law (ECF No. 42) is **GRANTED IN PART AND DENIED WITHOUT**

    **PREJUDICE IN PART**;[1] and

---

[1]     The Government alleges that Mr. Rifai defrauded the Medicare program by submitting false claims for reimbursement. (Indictment ¶ 16, ECF No. 1.) Specifically, Mr. Rifai allegedly submitted claims to Medicare for "psychological services and 'add-on' services" that neither he nor his staff provided to nursing home patients. (*Id.* ¶ 17.) He allegedly accomplished this by citing to Current Procedural Terminology ("CPT") codes that overstated the services provided (*id.* ¶ 18), and he allegedly supported these overstated CPT codes by adding "handwritten notations or a pre-printed stamp to patient progress notes" even where Mr. Rifai had not himself evaluated the patient (*id.* ¶ 19). Mr. Rifai also allegedly submitted duplicate claims for the same patients, billed for patients who had already passed away, and billed for more than 24 hours of work in one day. (*Id.* ¶ 20.) The Government claims that Mr. Rifai defrauded Medicare of approximately $1.36 million through these practices. (*Id.* ¶ 22.) The Government has brought four counts reflecting individual instances of Mr. Rifai allegedly submitting claims for services not actually provided. (*Id.* ¶ 23.)

Currently stayed before this Court is a related civil action involving two former employees of Mr. Rifai, both of whom will be witnesses at the upcoming trial. *See United States ex rel. Reddy v. Rifai*, No. 17-cv-5069 (E.D. Pa.). Mr. Rifai now asks this Court "to order disclosure of any and all information pertaining to any communication these whistleblower witnesses have engaged in regarding their interest in a monetary award," including any "emails, letters, or oral statements, not just to government agents and prosecutors, but with anyone regarding this case, Dr. Rifai, and the potential windfall they may receive based on their role in the investigation of this case." (Supp.

2.      Mr. Rifai's Mot. *in Lim.* to Limit Lay / Expert Witness Test. (ECF No. 43) is

**GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.[2]

---

Mot. for Disclosure of Exculpatory Evid. and Combined Mem. of Law at 2, ECF No. 42.)  Mr. Rifai also reiterates a prior request for the Government to turn over exculpatory evidence (*id.*), which this Court denied as moot given the Government's representation that it had complied with its discovery obligations (Order at 1, ECF No. 26).

Mr. Rifai has again provided no basis to disbelieve the Government's representation that, in compliance with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), it has turned over favorable evidence and impeachment material, including interview reports, grand jury testimony, and records related to the "whistleblower" former employees (Gov't's Omnibus Resp. to Def.'s Mots. at 5–6, ECF No. 48). Lacking any indication that Mr. Rifai has not received the information to which he is entitled, the Court denies his request without prejudice.  *See, e.g.*, *United States v. Johnson*, 2020 WL 7065833, at *4 (W.D. Pa. Dec. 3, 2020) (denying a similar request without prejudice where "[t]here is no indication that the government has not met its obligations under *Brady*"); *United States v. Garrido*, 2023 WL 198780, at *3 (D.N.J. Jan. 17, 2023) (same).  Given the approaching trial, however, the Court grants Mr. Rifai's Motion insofar as the Government shall disclose exculpatory and impeachment evidence to Mr. Rifai no later than April 19, 2024—ten days before trial.  *Cf. United States v. Baldwin*, 2024 WL 1003968, at *4 (W.D. Pa. Mar. 8, 2024) (denying in part and without prejudice a similar motion but granting it insofar as the court set deadlines for disclosure).

The Court also notes that although the prosecution must only provide items within its "possession, custody, or control," Fed. R. Crim. P. 16(a)(1)(E), and although the prosecution need not "learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue," *United States v. Pelullo*, 399 F.3d 197, 216 (3d Cir. 2005), the prosecution may still be found to have constructive knowledge of benefits conferred to witnesses in exchange for their testimony by other arms of the Government, *see United States v. Thornton*, 1 F.3d 149, 158 (3d Cir. 1993) (prosecutors should have disclosed payments to witnesses by the U.S. Drug Enforcement Administration); *see also Sattazahn v. Wetzel*, 2021 WL 2291334, at *8 (E.D. Pa. June 3, 2021) (discussing case law supporting the rule that the Government must disclose evidence of a *mutual* agreement between it and a witness but not evidence of situations in which witnesses *unilaterally* expected some benefit for their testimony), *opinion vacated in part on other grounds*, 2021 WL 11511532 (E.D. Pa. July 20, 2021), *aff'd sub nom. Sattazahn v. Sec'y Pennsylvania Dep't of Corr.*, 2023 WL 3676782 (3d Cir. May 26, 2023).

[2]      Mr. Rifai has raised the concern that the Government "may attempt [improperly] to introduce testimony of agents or others regarding evidence that would be considered expert testimony as 'lay opinion' testimony under Federal Rule of Evidence 701 . . . ."  (Mot. *in Lim.* to Limit Lay / Expert Witness Test. at 5, ECF No. 43.)  To prophylactically address this potential issue, Mr. Rifai asks the Court to require the Government to "provide a summary of the lay/expert opinions of each witness they intend to call at trial to offer such opinions so that the Defendant can challenge this evidence pretrial," including through a *Daubert* hearing, if necessary.  (*Id.* at 9–10.)

**BY THE COURT:**


      */s/ Jeffrey L. Schmehl*

In response, the Government defends its ability to call employees of Mr. Rifai and have them offer their lay opinion (in addition to any fact testimony) as to Mr. Rifai's medical practice and his degree of control over it. (Gov't's Omnibus Resp. to Def.'s Mots. at 8–9.) The Government is correct that the Third Circuit has approved lay opinion testimony as to a defendant's management of his business and the culture fostered by such management, subject to the usual restrictions that lay opinion testimony may not explicitly address the ultimate issues reserved for the jury, and a witness's lay opinion must be rationally based on that witness's own perceptions. *See, e.g.*, *United States v. Polishan*, 336 F.3d 234, 243 (3d Cir. 2003); Fed. R. Evid. 701. As described by the Government, the testimony of Mr. Rifai's former employees appears to fall within this ambit, though Mr. Rifai of course retains the right to object at trial should the Government exceed the relevant boundaries. Other than the issue discussed below, the parties have not identified any other potentially problematic lay opinion testimony, and the Court will deal with any such issues as they arise. As to these matters, then, Mr. Rifai's Motion is denied without prejudice.

The Government has also flagged its intent to call Noreen Thomas, "a witness from Medicare contractor Safeguard Services," who will "help the jury understand the Medicare Program and its requirements for paying claims submitted by providers," including by "apply[ing] their knowledge of Medicare rules and regulations . . . to the facts of this case." (Gov't's Omnibus Resp. to Def.'s Mots. at 7.) The Government intends to have Ms. Thomas provide this testimony through Rule 701, as it does not concede that Ms. Thomas must qualify as an expert to provide this testimony—though the Government has also offered to "prepare an expert disclosure" (presumably as to Ms. Thomas). (*Id.*) The Third Circuit has explained that although lay opinion testimony may not be "based on scientific, technical, or other specialized knowledge within the scope of [the Rule concerning expert testimony]," Fed. R. Evid. 701(c), it is not the case that "an expert is always necessary whenever the testimony is of a specialized or technical nature," *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009). Instead, "[w]hen a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge . . . ." *Id.* Because the Court does not have any information about Ms. Thomas's years of experience and exposure to cases similar to this one, the Court cannot now say whether she has the requisite "particularized knowledge by virtue of her experience." *Id.* Accordingly, by April 15, 2024, the Government shall provide Mr. Rifai with a short statement setting forth such knowledge and summarizing Ms. Thomas's expected testimony. The parties shall also immediately exchange expert witness disclosures (if they have not done so already). This process will provide Mr. Rifai with the information necessary to determine whether to reassert his objection to having Ms. Thomas testify under Rule 701 or 702. Any such objection shall be reasserted by April 22, 2024.

- 4 -

**JEFFREY L. SCHMEHL, J.**